**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| RICHARD NUZZO, | ) | CASE NO.  4:11-cv-356 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

Plaintiff, Richard Nuzzo ("Plaintiff"), challenges the final decision of Defendant,

Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying

Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the

Social Security Act, 42 U.S.C. § 1381 *et seq.* ("the Act").  This Court has jurisdiction

pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned United States

Magistrate Judge pursuant to the consent of the parties entered under the authority of

28 U.S.C. § 636(c)(2).  For the reasons set forth below, the Commissioner's final

decision is AFFIRMED.

## I.  PROCEDURAL HISTORY

On December 14, 2005, Plaintiff protectively filed an application for SSI and

alleged a disability onset date of February 14, 2002.  (Tr. 18.)  The application was denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ").  (Tr. 18.)  A hearing was scheduled for December 29, 2008.  (Tr. 33.)  On December 16, 2008, Plaintiff requested that the hearing be continued because he was scheduled to attend chemical dependency rehabilitation at that time.  (Tr. 32.)  The ALJ rescheduled Plaintiff's hearing for March 27, 2009.  (Tr. 28.)

On March 17, 2009, Plaintiff retained legal counsel.  (Tr. 27.)  That same day, Plaintiff requested that his hearing be continued again because his counsel observed that two years of medical documentation remained outstanding and wished to obtain that evidence and submit it into the record.  (*See* Tr. 10, 171.)  The ALJ denied the second request to continue the hearing.  (Tr. 171.)

On March 27, 2009, the ALJ held Plaintiff's hearing.  (Tr. 18, 171.)  Plaintiff's attorney, Ms. Michelle T. McFarland, and a vocational expert ("VE") appeared at the hearing, but Plaintiff did not.  (Tr. 18, 171.)  Counsel explained that Plaintiff knew the hearing was scheduled for that day but thought that his presence was not necessary because he had retained legal counsel who would be present.  (Tr. 18, 171.)  Counsel further conceded that Plaintiff fully understood that the hearing would proceed without him.  (Tr. 171-72.)

Plaintiff's counsel noted that there were no treatment records in evidence, that treatment records existed from the past two years, and that she intended to submit those records to the ALJ.  (Tr. 172.)  The ALJ offered that he would either postpone Plaintiff's hearing until later that day to permit Plaintiff an opportunity to attend; or he

2

would proceed with the hearing and permit counsel to argue Plaintiff's case.  The ALJ further informed counsel that he would permit her to obtain the absent treatment records and submit them with a letter brief wherein she could argue how the evidence supports Plaintiff's claim for disability, and that he would consider that evidence and determine whether to hold an additional hearing or render a decision.  (Tr. 174.)

Plaintiff's attorney chose to proceed without Plaintiff because she anticipated that Plaintiff's testimony simply would reiterate any information contained in the absent treatment records, that is, what Plaintiff told his counselors.  (Tr. 173.)  The ALJ took testimony from the VE, permitted counsel to argue Plaintiff's case, and held the record open for 30 days so that counsel could obtain and submit Plaintiff's treatment records.  (Tr. 174, 179.)  The ALJ further explained that Plaintiff could ask for an extension of time to obtain and submit his treatment records, and that he usually granted extensions when claimants attempted to obtain medical records but were unable to do so.  (Tr. 179.)

On April 10, 2009, Plaintiff requested his treatment records from Turning Point - Youngstown.  (Tr. 10.)  Apparently, Turning Point - Youngstown did not respond, as on April 17, 2009, Plaintiff requested an additional 30 days from the ALJ to obtain and submit his treatment records.  (Tr. 18, 27.)  Plaintiff alleges that the ALJ denied this request; but Plaintiff does not cite, and the record does not contain evidence that the ALJ denied the request.

On June 29, 2009, the ALJ found Plaintiff not disabled.  (Tr. 26.)  The ALJ found that good cause did not exist for Plaintiff's failure to appear at his hearing.  Further, the ALJ noted that, although Plaintiff had requested additional time to obtain and submit his

3

treatment records on April 17, 2009, at the time he rendered his decision Plaintiff had not submitted additional evidence.[1]  (Tr. 18.)

On July 13, 2009, Plaintiff requested the Appeals Council to review the ALJ's decision.  (Tr. 14.)  It appears that Plaintiff still had not obtained his treatment records from Turning Point - Youngstown, as on August 17, 2009, Plaintiff again requested his treatment records from Turning Point - Youngstown.  (Doc. No. 16-1.)  Plaintiff apparently received the records shortly thereafter, as on September 1, 2009, Plaintiff emailed treatment notes from Dr. Tusaie dated between October 2008 and July 2009 to the Appeals Council.  (Doc. No. 16-1.)

On June 3, 2010, Plaintiff's attorney wrote a letter to the Appeals Council and argued, in part, that "the ALJ failed to fully update the record and made no attempt to do so."  (Tr. 9.)  Plaintiff explained only that his "treatment records from Turning Point - Youngstown were not introduced into the evidence," and "[t]hese records clearly demonstrate [his] serious mental impairments."  (Tr. 9.)  Plaintiff also sought remand for consideration of allegedly new and material evidence consisting of treatment records from Turning Point - Youngstown obtained after the ALJ rendered his decision.  (*See* Tr. 10.)  Almost two months later, on July 30, 2010, Plaintiff emailed to the Appeals Council a medical source statement from Brian S. Sullivan[2] at Turning Point - Youngstown dated July 28, 2010.  (Doc. No. 16-2.)

---

[1]  The ALJ did not indicate whether he granted or denied Plaintiff's request for additional time to obtain and submit his treatment records.

[2]  The record does not clearly indicate Mr. Sullivan's credentials or treatment relationship with Plaintiff.

4

On January 24, 2011, the Appeals Council confirmed that it had received additional evidence from Plaintiff.  (Tr. 8.)  It indicated that the evidence consisted of a letter from Plaintiff's council dated July 13, 2009,[3] and that it was making the evidence a part of the record.  (Tr. 8.)  The same day, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision.  (Tr. 5.)

On February 17, 2011, Plaintiff filed his complaint to challenge the Commissioner's final decision.  (Doc. No. 1.)  On September 23, 2011, the parties filed a stipulated motion to supplement the transcript of administrative proceedings with records of Plaintiff's treatment at Turning Point - Youngstown dated between September 2009 and July 2010.  (Doc. No. 16.)  On September 27, 2011, Plaintiff filed his Brief on the Merits.  (Doc. No. 17.)  On September 28, 2011, the Court granted the parties' stipulated motion.  (Order 09/28/11.)  On November 28, 2011, the Commissioner filed his Brief on the Merits.  (Doc. No. 19.)  Plaintiff did not file a Reply Brief.

Plaintiff contends that the ALJ violated his due process rights by (1) denying his March 17, 2009, request to continue his hearing and proceeding with the hearing without his treatment records from Turning Point - Youngstown, and (2) rendering a decision without his treatment records from Turning Point - Youngstown.  Plaintiff also

---

[3] The transcript of administrative proceedings does not contain a letter from Plaintiff's counsel dated July 13, 2009, or any treatment records from Turning Point - Youngstown.  The parties stipulated to the addition of certain treatment records from Turning Point - Youngstown, but that evidence did not include a letter from Plaintiff's counsel dated July 13, 2009.

5

seeks remand for consideration of new and material evidence pursuant to sentence six of 42 U.S.C. § 405(g).

## II.   EVIDENCE

### A.   Personal and Vocational Evidence

Plaintiff was 44 years old on the date he filed his application.  (Tr. 24.)  He has a limited education and is able to communicate in English.  (Tr. 24.)  He has past relevant work experience as an auto mechanic.  (Tr. 24.)

### B.   Medical Evidence

#### 1.   Medical Evidence Submitted to the ALJ

On March 6, 2006, Plaintiff presented to Dr. J. Joseph Konieczny, Ph.D., to undergo a consultative psychological examination at the request of the Bureau of Disability Determination.  (Tr. 142-45.)  Dr. Konieczny indicated the following.  Plaintiff "reported a fairly lengthy and consistent formal work history until 2001."  (Tr. 143.)  When Dr. Konieczny asked Plaintiff why he had not worked since 2001, Plaintiff responded "I have extreme anxiety."  (Tr. 143.)  Plaintiff further reported a history of cocaine use, and that the last time he used cocaine was in September 2005.  (Tr. 143.)  Dr. Konieczny indicated that Plaintiff had never received treatment for substance abuse, and had never been hospitalized or treated for psychiatric reasons.  (Tr. 143.)

Plaintiff reported suffering anxiety attacks for the past four or five years, as well as occasional episodes of agoraphobia secondary to the anxiety attacks.  (Tr. 144.)  Dr. Konieczny diagnosed Plaintiff with Dependant Personality Features and declined to offer any further diagnoses; however, he indicated that "consideration should be given

6

to a diagnosis of Panic Disorder with Agoraphobia . . . and Panic Disorder Affecting

General Medical Condition."  (Tr. 145.)  Dr. Konieczny also indicated that Plaintiff

exhibited "a moderate degree of deficit in his general fund of information," and,

therefore, suggested that "consideration should be given to the diagnosis of Borderline

Intellectual Functioning."  (Tr. 145.)

Dr. Konieczny assessed Plaintiff's mental functioning as follows:

> Richard's ability to concentrate and to attend to tasks shows indications of
> mild impairment and would appear to reflect his anxiety. His ability to
> understand and to follow directions appears adequate. His ability to
> withstand stress and pressure shows indications of moderate impairment
> and would also appear to reflect his apparent anxiety.  Similarly, his ability
> to relate to others and to deal with the general public shows indications of
> mild to moderate impairment.  His insight into his current situation seems
> fair.  He shows a moderate degree of deficit in his awareness of rules of
> social judgment and conformity. His overall level of judgment should be
> regarded as fair.  Richard currently resides with his parents and participates
> in routine daily household responsibilities.  He would appear to require some
> degree of supervision and monitoring in the management of his daily
> activities and in the handling of his financial affairs. His overall level of
> functioning is at a slightly reduced level of efficiency.

(Tr. 145.)  Regarding Plaintiff's symptoms, Dr. Konieczny assigned Plaintiff's a Global

Assessment of Functioning ("GAF") score of 54;[4] and regarding Plaintiff's functionality,

he assigned Plaintiff a GAF score of 50[5] to reflect Plaintiff's lack of friends and

---

[4]  A GAF score between 51 and 60 indicates moderate symptoms or moderate
difficulty in social, occupational, or school functioning.  A person who scores in
this range may have a flat affect, occasional panic attacks, few friends, or
conflicts with peers and co-workers.  *See Diagnostic and Statistical Manual of
Mental Disorders* 34 (American Psychiatric Association, 4th ed. rev., 2000).

[5]  A GAF score between 41 and 50 indicates serious symptoms or a serious
impairment in social, occupational, or school functioning.  A person who scores
in this range may have suicidal ideation, severe obsessional rituals, no friends,
and may be unable to keep a job.  *See Diagnostic and Statistical Manual of
Mental Disorders*, *supra* note 4, at 34.

employment.  (Tr. 145.)

On March 17, 2006, state agency reviewing medical consultant Catherine Flynn evaluated the record evidence, assessed Plaintiff's mental residual functional capacity ("RFC"), and performed a Psychiatric Review Technique.  (Tr. 147-163.)  Ms. Flynn indicated the following in her mental RFC assessment.  Plaintiff was markedly limited in his ability to interact appropriately with the general public.  (Tr. 148.)  He was moderately limited in his abilities to:  understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; and respond appropriately to changes in the works setting.  (Tr. 147-48.)  He was not significantly limited in his abilities to: understand and remember very short and simple instructions; and work in coordination with or proximity to others without being distracted by them.  (Tr. 147-48.)  There was no evidence of limitation in any other categories of functioning.  (Tr. 147-48.)  Ms. Flynn concluded as follows:

> The claimant retains the ability to complete simple to moderately complex tasks. He can relate at least superficially to others. His concentration is adequate for simple to moderately complex task completion. He has a reduced stress tolerance and should avoid jobs with strict time or production standards.

(Tr. 149.)

In her Psychiatric Review Technique, Ms. Flynn assessed Plaintiff under Listing

8

12.08 for a personality disorder and Listing 12.09 for a substance abuse disorder, and indicated the following.  (Tr. 150.)  Plaintiff suffered medically determinable impairments that could cause his alleged symptoms—namely, Dependant Personality Disorder and cocaine abuse.  (Tr. 157-58.)  Under the "B" criteria for the Listings, Plaintiff was moderately limited in his abilities to maintain social functioning and concentration, persistence, or pace; and mildly limited in his ability to perform activities of daily living.  (Tr. 160.)  Further, there were no episodes of decompensation.  (Tr. 160.)

## 2.    Medical Evidence Submitted to the Appeals Council

Between October 2008 and September 2009, Plaintiff presented to Dr. Kathleen Tusaie, Ph.D., at Turning Point - Youngstown for counseling and treatment.  (Doc. No. 16-1.)  On October 25, 2008, Dr. Tusaie indicated that Plaintiff reported "multiple symptoms of anxiety as well as use of street drugs"; and Dr. Tusaie assigned Plaintiff a GAF score of 50.  (Doc. No. 16-1, at 32-33.)  On January 9, 2009, Dr. Tusaie reported that Plaintiff was suffering from withdrawal.  (Doc. No. 16-1, at 28-29.)  On February 27, 2009, Dr. Tusaie indicated that Plaintiff was "improving significantly," and that Plaintiff reported "feeling better."  (Doc. No. 16-1, at 26-27.)

On May 18, 2009, Plaintiff reported feeling "shakey" the week before and was not sure if he had been suffering an anxiety attack or a side effect from his medication.  (Doc. No. 16-1, at 24.)  Plaintiff further reported that he had been studying for a "GED" and was "feeling much better since not using street drugs."  (Doc. No. 16-1, at 24.)  On June 5, 2009, Dr. Tusaie indicated that Plaintiff was "improving," as he had "fewer and less intense episodes of 'nervousness.'"  (Doc. No. 16-1, at 22-23.)  On July 24, 2009, Dr. Tusaie indicated that Plaintiff's symptoms were stable with medication, and Plaintiff

was "doing well" as he had obtained his GED and was working doing automobile repairs.  (Doc. No. 16-1, at 20-21.)

On July 28, 2010, Mr. Brian S. Sullivan from Turning Point - Youngstown authored a medical source statement and assessed Plaintiff's functioning as follows.  (Doc. No. 16-2.)  Plaintiff had a "poor" ability to:  follow work rules; maintain attention and concentration for extended periods of 2 hour segments; maintain regular attendance and be punctual within customary tolerances; deal with the public; relate to co-workers; interact with supervisors; work in coordination with or proximity to others without being unduly distracted or distracting; deal with work stress; complete a normal workday and work week without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; and behave in an emotionally stable manner.  (Doc. No. 16-2, at 2-3.)  He had a "fair" ability to:  use judgment; respond appropriately to changes in routine settings; function independently without special supervision; understand, remember, and carry out detailed and complex job instructions; maintain appearance; relate predictably in social situations; and leave home alone.  (Doc. No. 16-2, at 2-3.)  He had a "good" ability to:  understand, remember, and carry out simple job instructions; socialize; and manage funds and schedules.  (Doc. No. 16-2, at 3.)  Mr. Sullivan indicated that the medical or clinical finding that supported his assessment was the fact that Plaintiff sometimes needed someone else to drive him places.  (Doc. No. 16-2, at 3.)

### C.    Hearing Testimony

Plaintiff did not testify at his hearing because he failed to appear.  The ALJ posed the following hypothetical to the VE:

10

> [W]ould you please assume a hypothetical individual with the claimant's
> education, training, and work experience? This person would be able to work
> at the medium exertional level, this person would be limited to simple,
> routine, repetitive tasks not performed in a fast-paced production
> environment, with relatively few workplace changes. . . . Only simple
> decisions, relatively low stress. This person would be limited to only
> occasional interaction with supervisors, coworkers, and the general public.

(Tr. 176.)  The VE testified that such a person could not perform Plaintiff's past relevant

work, but could perform other work as a laundry worker (for which there were over

200,000 jobs in the national economy), janitor (for which there were over two million

jobs in the national economy), and marker (for which there were over 500,000 jobs in

the national economy).  (Tr. 176-77.)

The ALJ reduced the exertional level in his hypothetical to "light" work.  (Tr. 177.)

The VE responded that such a person could perform other work as a sorter (for which

there were over 400,000 jobs in the national economy), cleaner (for which there were

over one million jobs in the national economy), and order caller (for which there were

over two million jobs in the national economy).  (Tr. 177.)

The ALJ further reduced the exertional level in his hypothetical to "sedentary"

work.  (Tr. 177.)  The VE responded that such a person could perform other work as an

addresser (for which there were over 100,000 jobs in the national economy), document

preparer (for which there were over one million jobs in the national economy), and ticket

checker (for which there were over one million jobs in the national economy).  (Tr. 177.)

Plaintiff's attorney asked whether such a person could sustain employment if he

were off task between 15 and 20 percent of the workday because of anxiety.  (Tr. 178.)

The VE responded that such a person likely would be terminated from employment.

(Tr. 178.)

11

The VE concluded that her testimony was consistent with the Dictionary of Occupational Titles.  (Tr. 178.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities."  *Abbot,* 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the

12

impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), *and* 416.920(g).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.  The claimant has not engaged in substantial gainful activity since December 14, 2005, the application date.

2.  The claimant has the following severe impairments:  a personality disorder and a substance abuse disorder.

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the Listed Impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work . . . except that he is limited to simple, routine, repetitive work not performed in a fast paced production environment with only simple work decisions and few changes in the work place, which is limited to a low stress environment; with only occasional interactions with supervisors, co-workers and the general public.

5.  The claimant is unable to perform any past relevant work.

. . . . .

8.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as  framework supports a

13

finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, from December 14, 2005, the date the application was filed.

(Tr. 20-26.)

## V.  LAW & ANALYSIS

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a

14

preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  _Brainard_, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  _Ealy_, 594 F.3d at 512.

> ### B.  Whether the ALJ Violated Plaintiff's Due Process Rights

Plaintiff contends that the ALJ violated his due process rights by (1) denying his March 17, 2009, request to continue his hearing and proceeding with the hearing without his treatment records from Turning Point - Youngstown, and (2) rendering a decision without his treatment records from Turning Point - Youngstown.  For the following reasons, these assignments of error are not well taken.

Due process requires that a social security hearing be "full and fair."  _Flatford v. Chater_, 93 F.3d 1296, 1305 (6th Cir.1996) (quoting _Richardson v. Perales_, 402 U.S. 389, 401-02 (1971)).  A claimant must have the opportunity to present all of his evidence and to confront the evidence against him.  _See Flatford_, 93 F.3d at  1306. The Social Security regulations, as well as the Hearings, Appeals and Litigation Law Manual of the Social Security Administration ("HALLEX"),[6] provide that a claimant may request to reschedule a hearing if his "representative was appointed within 30 days of the scheduled hearing and needs additional time to prepare for the hearing."  20 C.F.R. § 404.936(f)(2); HALLEX I-2-3-10.  But a claimant must show good cause to change the time or place of a scheduled hearing.  20 C.F.R. § 404.936(d); HALLEX I-2-3-10.  In

---

[6] HALLEX sets forth safeguards and procedures for the agency's administrative proceedings.  _See Bowie v. Comm'r of Soc. Sec._, 539 F.3d 395, 397 (6th Cir. 2008); _Robinson v. Barnhart_, 124 F. App'x 405, 410 (6th Cir.2005).

determining whether good cause exists, the ALJ considers the reason for requesting

the change, the facts supporting it, and the impact of the proposed change on the

efficient administration of the hearing process.  20 C.F.R. § 404.936(f); HALLEX I-2-3-

10.  Factors that affect the impact of a change include the effect on other scheduled

hearings, delays which might occur in rescheduling the claimant's hearing, and whether

any prior changes were granted.  20 C.F.R. § 404.936(f); HALLEX I-2-3-10.

Plaintiff argues that he established good cause for requesting a continuance

because he secured legal representation ten days before his hearing, and the record at

that time did not contain Plaintiff's past two years of treatment records from Turning

Point - Youngstown.  But the regulations and HALLEX do not provide that such

circumstances *per se* constitute good cause; rather, they explain that the ALJ must

consider certain factors to determine whether the requested continuance is warranted

under the circumstances, including whether any prior changes in the schedule were

granted.  Here, Plaintiff already had been granted one continuance, which was for three

months.  Plaintiff has not explained why he had been unable to obtain and submit his

treatment records by that time,[7] and why he was unable to obtain counsel until ten days

before his rescheduled hearing.  Further, the record shows that Plaintiff's counsel had

not even requested Plaintiff's records from Turning Point - Youngstown at the time she

began representing Plaintiff or by the time Plaintiff requested a second continuance, but

delayed until April 10, 2009—almost a month after she took Plaintiff's case and two

---

[7]  Plaintiff was notified that he had the right to submit additional evidence to the
ALJ in both the notice of his initial hearing, and in the notice of his rescheduled
hearing.  (Tr. 30, 35.)

16

weeks after Plaintiff's hearing.  In short, the record does not support the conclusion that the ALJ improperly denied Plaintiff's request for a second continuance.[8]

To the extent Plaintiff argues that the ALJ denied him a full and fair hearing by proceeding with the hearing without Plaintiff's treatment records, the argument lacks merit.  First, Plaintiff cites no legal authority in support of such a proposition.  Second, Plaintiff had the opportunity to obtain and submit his treatment records before and during his hearing and simply failed to do so.  Third, the ALJ gave Plaintiff the opportunity to present evidence during the hearing consistent with the treatment records and Plaintiff's declined the opportunity:  Plaintiff's counsel explained that Plaintiff's testimony likely would be consistent with his treatment records; the ALJ offered to postpone Plaintiff's hearing until later that day to permit Plaintiff to attend the hearing; and Plaintiff's counsel chose to proceed with the hearing without Plaintiff.  Fourth, the ALJ held the record open for Plaintiff to obtain and submit his treatment records for consideration.  In short, the record does not support the conclusion that the ALJ erroneously proceeded with Plaintiff's hearing without Plaintiff's treatment records.

The Court also is not persuaded that the ALJ failed to fully and fairly develop the record by rendering a decision without Plaintiff's treatment records.  Although the ALJ has a duty to ensure that a reasonable record has been developed, *see Johnson v.*

---

[8] Plaintiff further argues that the ALJ's "decision to deny Plaintiff's request for a continuance was shortsighted and inappropriate" because "it eventually led to this long, drawn out litigation, which, had the continuance been granted, would be moot and potentially have been more economical and efficient."  (Pl.'s Br. 11.)  These allegations are conclusory and belied by the record, which shows that the ALJ held the record open for Plaintiff to obtain his treatment records and Plaintiff delayed requesting them.

*Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986), it is incumbent

upon the claimant to provide an adequate record upon which the ALJ can make an

informed decision regarding the claimant's disability status, *see Landsaw v. Sec'y of*

*Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  Here, the ALJ gave Plaintiff

ample time to obtain and submit his treatment records before rendering a decision, and

Plaintiff continuously delayed doing so.  Further, the ALJ waited an additional two

months after Plaintiff requested more time to keep the record open before rendering a

decision.[9]  The ALJ observed at the time he rendered his decision that he still had not

received any of Plaintiff's treatment records.[10]  Indeed, the evidence from "the past two

years" that Plaintiff's counsel observed was absent on March 17, 2009, and wished to

obtain appears to remain absent, as the records Plaintiff finally obtained and submitted

to the Appeals Council date back to only five months before Plaintiff's hearing.

In short, the record supports the conclusion that the ALJ gave Plaintiff every

opportunity to obtain and submit evidence in support of his claim for disability, and that

Plaintiff simply failed to do so.  Moreover, Plaintiff cites no legal authority in support of

the conclusion that the evidence upon which the ALJ relied to render his decision was

insufficient.  Accordingly, this assignment of error is not well taken.

---

[9]  Plaintiff alleges that the ALJ denied his April 17, 2009, request for an additional
thirty days to obtain and submit his treatment records; but Plaintiff provides no
evidence that the ALJ denied this request.  It appears that there was no ruling
on the request and that counsel, nevertheless, failed to submit the records
within the time counsel requested.

[10]  Plaintiff then delayed an additional month and a half—until August 17,
2009—to make a second request for his records from Turning Point -
Youngstown.

### C.    Whether New and Material Evidence Warrants Remand

Plaintiff contends that his treatment records from Turning Point - Youngstown that were submitted to the Appeals Council warrant remand pursuant to sentence six of 42 U.S.C. § 405(g).  For the following reasons, the Court disagrees.

A "court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.  42 U.S.C § 405(g); *see Foster v. Halter,* 279 F.3d 348, 357 (6th Cir. 2001).  Evidence is "new" only if it was not in existence or available to the claimant at the time of the administrative proceeding.  *Foster,* 279 F.3d at 357.  Evidence is "material" only if there is a reasonable probability that the Commissioner would have reached a different conclusion on the claimant's disability claim if presented with the new evidence.  *Id.*  "Good cause" is shown  by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.  *Id.*  The claimant bears the burden of showing that remand is appropriate.  *Id.*

Plaintiff's treatment records dated before March 27, 2009, do not warrant remand because they are not new; rather, they existed and were available to Plaintiff at the time the ALJ held Plaintiff's hearing and Plaintiff simply failed to obtain those records and submit them to the ALJ.

Plaintiff also has failed to show that the treatment records dated after March 27, 2009, are material.  Plaintiff cites page 27 of Exhibit 1 attached to his stipulated motion

19

to supplement the record to argue that the medical records "show that Plaintiff has substantial difficulties with concentration and focus."  This contention is unsupported, as page 27 of Exhibit 1 makes no reference to Plaintiff's abilities to concentrate and focus. To the contrary, Dr. Tusaie indicated on that page that Plaintiff had been "improving significantly."  (Doc. No. 16-1, at 27.)

Plaintiff argues that two "treating sources" in the new evidence corroborate Dr. Konieczny's opinions, particularly his assignment of a GAF score of around 50.  This does not make it reasonably probable that the Commissioner would render a different decision if presented with this evidence.  A GAF score, alone, is not determinative of disability.  *See Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002).* Moreover, Dr. Konieczny opined that Plaintiff was only mildly to moderately limited, and Plaintiff does not show how the ALJ's RFC fails to account for such limitations. Accordingly, even if the new evidence supported Dr. Konieczny's opinions, there is no basis to conclude that the new evidence would support a more restrictive RFC or a finding of disability.

Also, it is not reasonably probable that the Commissioner would have reached a different conclusion on Plaintiff's disability claim if presented with Mr. Sullivan's opinions because there is no basis in the record to conclude that Mr. Sullivan is a treating source, and Mr. Sullivan's opinions are wholly unsupported by any clinical and diagnostic findings.[11]  *See Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993)* ("This

---

[11]  Indeed, it is not at all clear how the fact that Plaintiff sometimes required others to drive him places supports Mr. Sullivan's opinions of the extent to which Plaintiff is limited.

court has consistently stated that the Secretary is not bound by the treating physician's opinions, and that such opinions receive great weight only if they are supported by sufficient clinical findings and are consistent with the evidence.").  And it is not reasonably probable that the Commissioner would have reached a different conclusion on Plaintiff's disability claim if presented with Dr. Tusaie's treatment notes because those notes consistently show that, after Plaintiff endured withdrawal, Plaintiff's condition improved.

Finally, Plaintiff's argument for good cause—that "Plaintiff has demonstrated good faith in his attempts to secure and submit these records"—is conclusory and belied by the record, as the record shows that Plaintiff had ample opportunity to request his treatment records from Turning Point - Youngstown but consistently delayed doing so.  Accordingly, Plaintiff has failed to show that remand pursuant to sentence six of 42 U.S.C § 405(g) is warranted.

## VI.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

**IT IS SO ORDERED**.


*s/ Nancy A. Vecchiarelli*
U.S. Magistrate Judge

Date: March 2, 2012

21